FRUGÉ, Judge.
This suit was instituted by Mack W. Haynes against Gulf States Utilities Company seeking damages incurred as a result of the burnout of household equipment allegedly caused by low voltage supplied to his residence. Judgment was rendered in favor of the defendant, and the plaintiff has appealed. We affirm.
Haynes constructed his house in 1961. It was to be an all-electric home so he called on Gulf States to send a representative to check his electrical power needs. The representative gave Haynes certain requirements of the company which were followed in constructing the house. The house was subsequently served by Gulf States on its line through a IS KVA capacity transformer. Haynes testified that he protested the size of the transformer but was assured by the Gulf States representative that the IS KVA transformer was the size that Gulf States had recommended.
Haynes experienced no difficulty until 1968 when an air conditioner compressor burned out internally. It was admitted that this burnout was not connected to an electrical problem. The compressor subsequently burned out again and a new compressor was installed. A short time later the capacitor burned out in the air conditioner and this was replaced. In 1970, the garbage disposal unit burned out, as well as the air conditioner compressor, the deep freezer compressor, and the .motors on three water pumps.
Haynes testified that he did not suspect that the damage was resulting from low voltage until he had installed one of the replacement compressors on the air conditioner and three days later the running capacitor burned out. Haynes explained why he had not earlier suspected that the damages he experienced in 1968 and 1970 were due to low voltage. He indicated that the area had not grown up in the vicinity of his house and that in view of the promise *693 by Gulf States that they would check on his needs from time to time in the event that the area did grow up, he was not suspicious of low voltage.
According to the trial testimony, Haynes took a voltage check in early May of 1970, after the last motor failure occurred and obtained a reading of 110/220 volts. He then complained of low voltage to Gulf States. Charles Breaux, a substation foreman for Gulf States, responded to the call and obtained voltage readings of between 117/234 volts and 113/226 volts, the variations caused by the difference in the number of appliances on at the time the checks were made. The testimony indicated that there was some discrepancy between the voltage readings obtained with Haynes’ meter and that used by Breaux, the lower readings being obtained with Haynes’ meter. According to Breaux’s testimony, Haynes felt that the meter used by Breaux was more accurate and he calibrated his meter with the one Breaux was using.
Evidence was uncontradicted to the effect that all the electrical appliances and motors of American manufacture are designed to operate safely within a certain voltage range depending on the equipment rating. Each such appliance or motor bears a “name plate rating”. All of plaintiff’s appliances and motors were rated for a 115/230 volt system. The evidence introduced indicated that the plaintiff’s equipment was designed to be operated safely and efficiently within a voltage range of 10% plus or minus of the name plate rating. When operated within these voltage ranges, the manufacturer warrants that the equipment can be safely operated.
The evidence introduced at trial indicated that at no time was a reading taken at the plaintiff’s home that indicated that his voltage went below this plus or minus 10%. As a result, the trial judge in his written reasons for judgment found that the plaintiff had failed to prove by a preponderance of the evidence that the damages suffered by him were proximately caused by low voltage. The court pointed out that several of the invoices of repairmen showed failures of appliances not necessarily connected with low voltage, and that the evidence did not exclude other possible causes, except that of lightning.
The plaintiff argued on appeal that the trial judge erred in failing to give proper weight to the testimony of Gulf States’ employee, Charles Breaux, who admitted that he tested the voltage and found it to be low and made adjustments to correct it. The evidence indicates, however, that Mr. Breaux took various voltage readings at the Haynes residence when he responded to the low voltage complaint, and the results he obtained indicate that the voltage never went below the 10% plus or minus variance allowed from the name plate rating. However, since these voltage readings were less than the “ideal” of 120/240, Mr. Breaux took steps to increase the voltage in view of the complaints made by Haynes.
The plaintiff further argued that the evidence indicated that the transformer installed by Gulf States in 1961, was inadequate. The evidence indicates that plaintiff checked his voltage from time to time between the time that he moved into his home in 1962, and 1964. The readings he obtained showed a consistent 125/250 volts. At no time, according to the evidence introduced at trial, did the voltage readings ever go below the plus or minus 10% voltage required by the name plate rating on his appliances and motors.
The trial judge found that there was no evidence in the record to prove a causal connection between the alleged inadequacy of the transformer and the damages sustained by the plaintiff in this case. We think that this was an accurate conclusion based on the evidence. The evidence introduced at this trial indicated that an electrical motor burns out for only one reason —it becomes overheated. Low voltage can produce this overheating. But there are other causes for overheating of an electri *694 cal motor. Mr. Wyble, one of the plaintiff’s witnesses testifying at the trial, testified that a motor can overheat and burn out for a variety of reasons unrelated to voltage. In the case of an air conditioner compressor, for example, a burnout can be caused by a lack of freon, by an inadequate supply of freon, by contaminates in the oil/freon system, by mechanical failure of shut-off switches and fuses in the sealed unit, by inherent manufacturing defects, and by lightning. Both Mr. Wyble and Lawrence Lemoine, an expert air conditioning repairman called by Gulf States, positively testified that there is no way of inspecting a burned out motor and saying that it burned out for any particular reason. The only physical evidence is the fact of overheating, but the cause of overheating can only be speculated.
The plaintiff’s case rests upon his evidence of “low voltage” and, as indicated previously, the evidence indicates that at no time was the voltage reading below the plus or minus 10% variation allowed by the name plate rating on the motors and appliances involved in this case.
Evidence introduced by Mr. Haynes himself indicates that low voltage was not the probable cause of the damages he suffered. In the first place, plaintiff fully admitted on the stand that one of his air conditioner compressors had burned out from causes totally unrelated to voltage. Mr. Haynes claims damages to a compressor installed by Mouton Electric Service on May 13, 1968. This compressor was inspected by Prejean Refrigeration Service on several days in August, 1968. The repair ticket dated August 12, 1968, states as follows:
"To check out compressor in A/C unit. Check comp, amperes and operation. Also temperature coming out of ducts. Temp, was cold but compressor was running exceptionally hot. Check compressor pumping and holding, unit pumps okay, but was not holding too well, but could have been from overheat; add gas to unit to keep it cool and get proper amount of gas in unit, as this is a suctioned-cooled compressor. Ref. charge is very critical. Seems like other serviceman may at first time put too much gas and then later on purged gas and did not leave enough gas in unit.” (Tr. 16).
The above quoted repair ticket indicated that an insufficient supply of freon at the time caused the compressor to run exceptionally hot.
The same repairman came back several days later. His repair ticket dated August IS, 1968, states as follows:
“Service and labor on Lennox heat pump to go back and re-check compressor. Compressor was off on overloads when we arrived, but after checking unit, it was found that small fuse which controls reverse valve was not in place and unit had been running on heat cycle on hot days causing comp, to overheat”. (Tr. 16).
These statements made by repairmen on the repair tickets which were introduced into evidence clearly indicate that there were other possible causes of the damage suffered by the plaintiff, and were adequate evidence upon which the trial judge could base his findings.
We find no manifest error with the conclusions reached by the trial judge in this case. Therefore, his judgment will be sustained. Costs of this appeal are assessed against the plaintiff-appellant.
Affirmed.